## Commissioners *against* Murray.

In the city of Pittsburgh the mayor continues to exercise his commission of alderman after his appointment as mayor; but he is not entitled to the daily compensation of an alderman, in addition to his salary as mayor, for attendance as the presiding magistrate of the mayor's court.

WRIT of error to the court of common pleas of *Alleghany* county.

The following was the case stated for the opinion of the court below.

The plaintiff is one of the aldermen of the city of Pittsburgh, and was, in January 1828, duly elected mayor of the said city; was re-elected, and served until January 1830 in that capacity.

By the act of the 22d of February 1821 establishing a fee bill, section tenth (see *Purdon* 293, *ed. of* 1824), it is provided, " that each alderman, for each day's attendance at the mayor's court in the city of Philadelphia, shall be allowed 1 dollar and 20 cents, to be paid by the county, and no bench fees shall be charged against the county."

The city of Pittsburgh was incorporated by act of assembly of the 18th of March 1816. (See 6 *Smith's Laws* 357, &c.) The eighth section defines the powers and authorities of the aldermen, &c., but says nothing about fees or costs. The ninth section, relating to the duties of mayor, provides, that " he shall be entitled to receive, hold and enjoy all the emoluments which by the laws and ordinances of the corporation may hereafter be annexed and attached to the office of mayor." The eighteenth section of the act of incorporation enumerates and describes the duties of the mayor and aldermen in civil cases, giving them the same powers, and the like fees and costs as justices of the peace in similar cases.

By the second section of the act of the 10th of March 1817, 6

*Smith's Laws* 428, supplementary to the act of incorporation, it is provided, " that the aldermen of the said city, and the justices of the peace in the county of Alleghany, shall have full power and authority to do and perform all the duties of justices of the peace throughout the said county, and within the bounds of the said city." And the third section provides, " that all costs accruing in criminal cases in the said court, and for which, in the court of quarter sessions, the county would be liable, shall be paid out of the county treasury." Nothing, however, is said in any act of assembly as to compensation by the county to the mayor or aldermen of the city for attendance on the mayor's court (except what may be found in the fee bill of the 28th of March 1814; *Purdon's Dig. ed. of* 1818, *p.* 220 ; 6 *Smith's Laws* 228) ; but the same has been paid heretofore by the county to the aldermen (but not to the mayor), the services in such cases being considered the same as in Philadelphia.

Under this view of the case, the following questions were submitted for the consideration of the court below.

1. As the law now stands, have the aldermen of the city of Pittsburgh any claim against the county of Alleghany for services rendered by attending the sessions of the mayor's court? Can they legally charge, and would the commissioners of Alleghany county be warranted in paying the bills of such aldermen of the city of Pittsburgh, at the rate of 1 dollar 20 cents per day, as designated in the fee bill referred to, as compensatory to the aldermen of the city of Philadelphia, by the county commissioners of Philadelphia county?

2. Can the mayor, in his official capacity as such, being besides an alderman of the city, legally claim the sum of 1 dollar 20 cents per day for his attendance at the mayor's court, besides the salary he receives from the corporation? Would the commissioners of Alleghany county be warranted in paying such claim?

The plaintiff's claim in this case is for sixty-three days attendance as an alderman of the city of Pittsburgh, in the years 1828 and 1829, amounting to 75 dollars 60 cents, during which time he was also mayor of the said city, and received a regular salary as such from the city treasury.

If the opinion of the court be that the plaintiff is entitled to be paid by the county, then judgment to be entered for the plaintiff for the said sum of 75 dollars 60 cents, with costs. If of a contrary opinion, judgment to be entered for the defendants generally. Each party to be at liberty, if dissatisfied with the opinion of the court, to take out a writ of error to the supreme court, without entering bail, or making affidavit.

On both the points thus presented, the court below charged in favour of the plaintiff below.

The case was brought before this court on the following assignment of errors.

1. The court erred in deciding that the fee bill of the 20th of March 1810, allowing to each sitting alderman 1 dollar 50 cents per

[Commissioners v. Murray.]

diem (payable by the county), was applicable to the office of alderman in the city of Pittsburgh; that city having been incorporated, and the office created, subsequent to the passage of that act, to wit on the 18th of March 1816.

2. The court erred in deciding that the mayor of the city was entitled to pay as an alderman when presiding in the mayor's court of the city; and that on such occasions he acted in the double capacity of mayor and alderman, which entitled him to the fees of an alderman.

*Darragh*, for plaintiff in error.

The act of the 28th of March 1814, 6 *Smith's Laws* 228, allowing to "each alderman the fee of 1 dollar 20 cents per diem, whilst sitting in court, is not applicable to the aldermen of the city of Pittsburgh. The act incorporating the city of Pittsburgh being passed subsequent to the enactment of that act on the 18th of March 1816, 6 *Smith's Laws* 357, the fee bill of 1814 granted no fees to the aldermen of the city of Pittsburgh, no such officers then being in existence. If the fee is attached to the office of alderman, whether in existence or not at the time of the passage of the act, why should the legislature have deemed it necessary in the fee bill of the 22d of February 1821, *Purd. Dig. ed.* 1824, *p.* 293, to have provided that "each alderman, for each day's attendance at the mayor's court in the city of Philadelphia, shall receive 1 dollar 20 cents per diem, to be paid by the county."

In relation to the second error assigned, the office of mayor is distinct from that of an alderman; and seems to be so understood from the act of incorporation, the style being the mayor, aldermen and citizens. The office of alderman was necessary to be elected mayor, but when elected, the duties and rights of the mayor and alderman are separate and distinct. By the ninth section of the act of incorporation, the duty of the mayor is to preside in the mayor's court when present, and to be entitled to receive, hold and enjoy all the emoluments which, by the laws and ordinances of said corporation, may be attached to the office. These emoluments are the salary and fees created by the ordinances of the corporation, and attached to the office of mayor. The mayor is not prevented from acting as a justice of the peace or alderman whilst he holds the office of mayor, but it seems plain that the emoluments attached by the ordinances to the office would not allow of his receiving fees as an alderman for each day's setting in the mayor's court. The claim for these fees was never made by any of the mayors elect prior to the election of the defendant in error; nor has such claim been made since, the offices of mayor and alderman being supposed to be distinct and different, as respects their powers and duties in the mayor's court. The eleventh section of the act of incorporation expressly enacts, that the said mayor, recorder and aldermen, or any four or more of them (whereof the mayor or recorder shall be one), shall open court, &c.

[Commissioners v. Murray.]

*Dallas,* for defendant in error.

The question to be considered is, whether an alderman loses any of his functions or emoluments by being elected mayor? The fee bill of 1814 is a general law, and applies to the same officers subsequently appointed. Here the city treasury pays the mayor under an ordinance of the city. The act of incorporation says nothing about the salary of aldermen. By the same act it is provided, that either the mayor or the recorder being present, the mayor's court is full.

*Forward,* for plaintiff in error, in reply.

The office of alderman is merely a qualification for that of mayor. But they are entirely different, as to duties, in all respects. The mayor is a salaried officer. He is compensated for his services as mayor out of the city treasury under an ordinance of the city. His respective duties as mayor and as alderman, are distinct, and he is paid for each. He brings nothing to the bench of the mayor's court but the qualification for the office of mayor.

The opinion of the Court was delivered by

GIBSON, C. J.—Granting the aldermen of Pittsburgh to be entitled to the daily compensation provided by the act of 1814 for the aldermen of Philadelphia, it by no means follows that it is demandable by the mayor in his capacity of alderman. It is claimed here for services rendered on the bench of the mayor's court, where the claimant sat, not by virtue of his commission of alderman, but by virtue of his appointment of mayor. Though chosen from among the aldermen, and deriving the qualification of eligibility from his commission, he was an integral part of the court but as its presiding judge; and as such his functions were peculiar. Were the official qualification dispensed with in Pittsburgh, as it is in Philadelphia, the duties of a mayor chosen indifferently from among the citizens, would be precisely the same as those which were performed by the plaintiff. At his accession to the office he entered on it as an entire thing. As a public magistrate, indeed, exercising the ordinary jurisdiction of a justice of the peace, the powers conferred by his commission remained to be exercised as before, because they are not of a corporate nature; but as a corporate officer, or, to speak more plainly, as a judge of the mayor's court, by which, and by his executive duties alone, he was connected with the corporation, his functions as an alderman were merged in his functions as mayor. It is not pretended that he performed double sets of judicial duties; and for nothing else could he make out a colourable title to double compensation. Had not his judicial services been rendered in his capacity of mayor, it might plausibly have been said that his salary as mayor was not intended to compensate them. But by the ninth section of the act of incorporation, it is pointedly declared that the mayor shall perform the duty of presiding in the mayor's court, " *beside* that of an alderman;" and in thus imposing on the chief officer, *ex officio* the subordinate duties

of an alderman, we discover an evident design to merge his judicial functions as an alderman in those of the presiding judge. Had any thing else been intended, such a declaration would have been superfluous, because his power and authority as an alderman would have appertained to him by virtue of his commission. Exactly the same duties as those directed by the charter of Pittsburgh are performed by the mayor of Philadelphia, though not an alderman. As then the plaintiff sat in his capacity of mayor, his salary must be taken as full compensation of his judicial services.

Judgment of the common pleas reversed, and judgment here for the defendant.